16

DET023077

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

OWN CAPITAL, LLC, a California
limited liability company,

      Plaintiff,

v.

MOBE, INC., a Florida corporation,
and JOSEPH MORO, KELLY MORO,
JOSHUA "JOSH" BECKER and
MICHAEL BECKER, individuals,

      Defendants.

> Case:2:10-mc-51003
> Judge: Steeh, George Caram
> MJ: Whalen, R. Steven
> Filed: 09-07-2010 At 11:57 AM
> OTH OWN CAPITAL LLC V MOBE INC, ET
> AL (EB)

---

LAWRENCE V. STAWIARSKI (P54831)
EARL R. JOHNSON (P70359)
McDonald Hopkins PLC
Attorneys for Plaintiff
39533 Woodward Avenue, Suite 318
Bloomfield Hills, Michigan 48304
(248) 646-5070
(248) 646-5075 (fax)
lstawiarski@mcdonaldhopkins.com
ejohnson@mcdonaldhopkins.com

---

## MOTION FOR CONFIRMATION OF ARBITRATION AWARD

NOW COMES Plaintiff OWN Capital, LLC, by and through its counsel, McDonald

Hopkins PLC, and for its Motion for Confirmation of Arbitration Award states as follows:

### JURISDICTION, VENUE AND REQUEST FOR CONFIRMATION

1.      Plaintiff OWN Capital, LLC is a California limited liability company.

2.      Upon information and belief, Mobe, Inc. is a Georgia corporation whose

registered office is located at 1937 Collins Ave. PH25C, Sunny Isles, Florida 33160.

{2328211:}

3.      Upon information and belief, Defendant Joshua "Josh" Becker is a Florida resident, whose current address is 1937 Collins Avenue PH25C, Sunny Isles, Florida 33160.

4.      Upon information and belief, Defendant Michael Becker is a Florida resident, whose current address is 20155 Yacht Club Drive, Apt. 1709, Aventura, Florida 33180.

5.      Upon information and belief, Defendant Joseph Moro is a Florida resident, whose current address is 330 SW 167th Avenue, Pembroke Pines, Florida 33027.

6.      Upon information and belief, Defendant Kelly Moro is a Florida resident, whose current address is 330 SW 167th Avenue, Pembroke Pines, Florida 33027.

7.      Jurisdiction is proper in this court pursuant to the parties' agreement to arbitrate under the Federal Arbitration Act, 9 U.S.C. §§ 1 – 16.

8.      Venue is proper in this Court pursuant to the Promissory Note (Section 19) wherein the parties agreed that the arbitration would be conducted in the Eastern District of Michigan.  The Promissory Note, which includes the arbitration agreement, is attached hereto as **Exhibit 1**.

9.      This matter arises out of an arbitration that occurred in the City of Bloomfield Hills, County of Oakland, State of Michigan.

10.      Pursuant to the award, Plaintiff OWN Capital, LLC is owed Two Hundred Fifty-Five Thousand Three and 44/100 Dollars ($255,003.44). The Arbitration Award is attached hereto as **Exhibit 2**.

WHEREFORE, Plaintiff OWN Capital, LLC requests that, pursuant to 9 U.S.C. § 9, this Honorable Court enter a judgment confirming the attached Arbitration Award in the amount of Two Hundred Fifty-Five Thousand Three and 44/100 Dollars ($255,003.44), together with

interest thereon as allowed by law, against Defendants Mobe, Inc., Joshua "Josh" Becker,

Michael Becker, Joseph Moro and Kelly Moro, jointly and severally.

                                    Respectfully submitted,

Dated:  September 1, 2010           McDONALD HOPKINS PLC

                              By:   _____
                                    LAWRENCE V. STAWIARSKI (P54831)
                                    EARL R. JOHNSON (P70359)
                                    Attorneys for Plaintiff
                                    39533 Woodward Avenue, Suite 318
                                    Bloomfield Hills, Michigan 48304
                                    (248) 646-5070 phone
                                    (248) 646-5075 fax
                                    lstawiarski@mcdonaldhopkins.com
                                    ejohnson@mcdonaldhopkins.com

# EXHIBIT 1

# ORBACH WATERS ADVISORS, INC.

### REGISTERED INVESTMENT ADVISORS

## PROMISSORY NOTE

### Borrowing Entity: MOBE INC.

### Principal Amount: $400,000
(Four Hundred Thousand Dollars)

Term (in months): 36 months                    Date of Note: March 15th, 2008
Place (city/state): Plantation, FL              Monthly payment: $15,965
Loan Origination Fee: $5,000 (Due up front)

1.    BORROWER'S PROMISE TO PAY

For a valuable consideration the receipt and sufficiency of which is hereby
acknowledged, the undersigned obligor ("Borrower") promises to pay Orbach Waters,
LLC, a California limited liability company ("Lender"), or its order, the principal amount of
$400,000 (Four Hundred Thousand Dollars) with interest on the unpaid balance thereof
("Basic Interest") accruing at the rate of nine percent (9.25%) per annum, compounded
monthly, payable in thirty six (36) equal monthly installments of principal and basic
interest in the sum of twelve thousand seven hundred sixty five dollars ($12,765), plus
contingent interest (as defined in Section 3 below), of three thousand two hundred
dollars ($3,200) for a total of fifteen thousand nine hundred sixty five dollars ($15,965).
Payments of principal and interest, including basic interest and contingent interest, are
due and payable on the 15th day of each calendar month, commencing on April 15th,
2008, and continuing thereafter until fully paid.  Each installment payment shall be
credited first to accrued interest and then to reduction of principal.

2.    FORM AND PLACE OF PAYMENT

Borrower shall make payments in lawful money of the United States of America and in
immediately available funds.  All payments under this note shall be made to ORBACH
WATERS, LLC (Lender) at its principal executive office, located at 32451 Golden
Lantern, Suite 307, Laguna Niguel, CA 92677, or at such other place(s) as Lender may
from time to time designate in a written notice to Borrower.

3.    CONTINGENT INTEREST

In addition to the Basic Interest defined in Section 1 above, Borrower shall pay to Lender
contingent interest in the amount of $4,000 per month.   Lender, as part of its
underwriting process and guidelines, determines the amount Borrower may qualify for by
the total number of contracts (see section 10) sold in any month by Borrower.  Lender
then multiplies the required number of contracts by forty dollars ($40) to determine the
contingent interest amount. Lender has determined, *but does not require borrower
actually to produce or sell*, number of monthly contracts to be 80, multiplied by $40, is
$3,200.

*Page 1 of 9*

32451 GOLDEN LANTERN, SUITE 307, LAGUNA NIGUEL, CA 92677 • PH (949) 489-0900 • FAX (949) 489-0800 • WWW.ORBACHWATERS.COM
MANAGERS OF ORBACH WATERS, LLC

4.      USE OF PROCEEDS

Borrowers agree that proceeds are to be utilized for general corporate purposes such as working capital and/or other related dealership interests.

5.      BORROWER'S RIGHT TO PREPAY PRINCIPAL WITHOUT PENALTY:

Borrower shall have the right to make payments of principal at any time prior to such payments becoming due. A payment of principal, only, is hereinafter referred to as a "prepayment." When making a prepayment Borrower shall inform Lender in writing that it is doing so, however Borrower may not designate a payment as a prepayment if Borrower has not made all of the monthly installment payments of principal and interest theretofore due under Section 1, above, of this note. Although Lender shall apply such prepayments in reduction of principal, Lender, at its option, may first apply the prepayment to the accrued and unpaid interest owing with respect to the prepayment before applying the balance thereof in reduction of the principal amount owing under this note. Borrower may make a full or partial prepayment without owing any charge, fee or other penalty. Notwithstanding that Borrower makes a prepayment there shall be no change in the due date of any monthly installment of principal and interest otherwise due and payable under this note, as described in Section 1, unless Lender shall have expressly agreed in writing to such change.

6.      EXCESSIVE LOAN CHARGES; USURY LAWS

If a law which applies to this loan, and which sets the maximum charges which may be levied with respect to any loan originated by Lender, is interpreted by a court of competent jurisdiction in the matter such that the interest or other charges collected or to be collected in connection herewith exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from Borrower which exceeded the permitted limits will be promptly refunded to Borrower. Lender may choose to make said refund by reducing the amount of principal owed under this note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment.

7.      LENDER'S RIGHT TO ASSIGN NOTE

Lender may, at its option and without notice, assign its contractual rights with respect to the obligations of Borrower evidenced by this note, and Borrower hereby agrees and consents to such right of assignment and transfer. Moreover, Borrower hereby represents its understanding and acknowledgment that in the event such assignment does occur, Borrower, upon receiving written notice of same, shall thereafter be required to remit all payments due and owing hereunder to said assignee as the lawful holder of this note, in Lender's place and stead, and that for purposes of this instrument the term "Lender" shall be deemed to include the said assignee as the holder of this note.

8.    BORROWER'S FAILURE TO PAY AS REQUIRED; DEFAULT

(a) If Lender shall not have received the full amount of any monthly installment of principal and interest by the end of 10 (ten) calendar days after the date such payment is due under Section 1, above, Borrower shall pay a late charge to Lender in the amount of ten percent (10%) of the overdue sum of principal and interest. Borrower shall pay this late charge promptly, but only once with respect to each such late payment. Late charges shall be added to the principal balance of the note and shall accrue interest hereunder in the same manner as principal.  (b) If Lender shall not have received the full amount of any monthly installment of principal and interest by the end of twenty (20) calendar days after the date such payment is due under Section 1, above, Borrower will be in default under the terms and conditions of this note. Promptly after Borrower falls into default, Lender shall send to Borrower a written notice informing Borrower that if it does not pay the overdue amount by a certain date, Lender may, at its option, accelerate the note by requiring Borrower to pay immediately the entire amount of outstanding principal due and owing, along with interest accrued at twenty (20%) percent thereon, as well as all late charges, collection costs and any other obligations remaining unpaid. For purposes of the preceding sentence, the date specified in Lender's "cure" notice must be at least three (3) days after the date on which said notice is given to Borrower.

9.    OTHER ACTS OF DEFAULT; TERMINATION FEE

The following acts shall constitute a default by Borrower of its obligations under this note, entitling Lender to declare all amounts that are to become due hereunder immediately due and payable, to wit:  (i) Borrower's filing of a petition in bankruptcy or pursuant to any other debtor relief laws, whether voluntarily or involuntarily; (ii) Borrower's insolvency or commission of any act of insolvency, including but not limited to an assignment by Borrower of all or substantially all of its assets for the benefit of creditors; or (iii) the appointment of a receiver for or on behalf of Borrower.  (b) Borrower shall then pay to Lender a termination fee equal to twenty percent (20%) of the outstanding balance due on this note.  (c) In the event that Lender has not received verification of irrevocable assignment of the death benefit from their life insurance policy, per section 13 of this note, within three months from the dated date of this note, then the note shall be deemed in default.  In the event of default, Borrowers shall then pay to Lender a termination fee equal to twenty percent (20%) of the outstanding balance due on this note.

10.   WAIVERS; PRESENTMENT AND NOTICE OF DISHONOR

Any of the terms or conditions of this note may be waived by Lender, but no such waiver shall affect or impair the rights of Lender to require strict observance, performance or satisfaction, either of that particular provision as it may apply on a subsequent occasion, or of any other term or condition of this note.  Borrower hereby expressly agrees that this note or any payment hereunder may be extended by Lender from time to time without affecting the liability of Borrower.  Borrower (and any other person who has obligations hereunder) hereby waives the following rights with respect to this note: presentment; protest and demand; notice of protest; notice of demand and dishonor, and notice of nonpayment. The term "presentment" refers to the right to require the note holder to demand payment of amounts due.  The term "notice of dishonor" refers to the right to require the note holder to give notice to others that amounts due hereunder have not been paid.

11.   TAX REPORTING

Borrower agrees that, within sixty (60) days following the end of any calendar year during which time any unpaid principal amount under this Note existed, Lender shall provide Borrower with a Form 1099-INT, showing the aggregate amount of interest (including Basic Interest and Contingent Interest) paid by Borrower to Lender during such calendar year, and shall provide a copy of such Form 1099-INT to the Internal Revenue Service as required by Section 6049 of the Internal Revenue Code of 1986, as amended.

12.   ARBITRATION/LITIGATION EXPENSES

The prevailing party in any action to collect payment on this note, or in connection with any dispute which arises as to its enforcement, validity or interpretation, whether or not legal action is instituted or prosecuted to final judgment, or to enforce any judgment obtained in any related legal proceeding, shall be entitled to all costs and expenses incurred, including reasonable attorney fees.

13.   BORROWERS PURCHASE OF LIFE INSURANCE

Life Insurance on Borrowers is required and they understand and acknowledge that they must obtain a life insurance policy and assign the death benefit to Orbach Waters Advisors, Inc., who manages the Orbach Waters, LLC, in the outstanding principal and accrued interest amount of this loan, for the life of the loan. If Borrowers have an existing life insurance policy, then Borrowers may assign death benefit in the amount of the loan to Lender and provide Lender with evidence of said assignment. If Borrowers requires purchasing a new policy, then Borrowers agrees to obtain said policy through the assistance of Orbach Waters Advisors, Inc. Borrowers acknowledge that they are not obligated to obtain said policy through Lender and may obtain a policy elsewhere.

14.   SEVERABILITY

If any provision of this note, or any word, term, clause or part of a provision of this note, shall be held void or invalid for any reason, the same shall be ineffective, but the remainder of this note, and of any such provision, shall not be affected thereby and shall remain in full force and effect.

15.   NOTICES

(a)   All notices, demands, requests or other form of written communication required or permitted to be given under this instrument shall be deemed sufficiently served and given for all purposes when delivered in person to the recipient or deposited in the United States mail, or upon being delivered to any common carrier or overnight courier service for shipment, or upon being sent by facsimile machine or transmitted electronically to the recipient via computer modem ("e-mail"). The physical, mailing or electronic address (or fax number) to which such notices, demands, requests or other forms of written communication are to be sent are set forth in subsections (b) and (c), below.

*Page 4 of 9*

Notices to Lender shall be addressed to:

Orbach Waters, LLC
Attention:  Garrett Waters
32451 Golden Lantern, Suite 307
Laguna Niguel, CA  92677
Telephone:  (949) 489-0900
Facsimile:  (949) 489-0800
E-mail:  gwaters@orbachwaters.com

Notices to Borrower shall be addressed to:

Mr. Joseph Moro
c/o Mobe Inc.
501 S State Road 7
Plantation, FL 33324
Tel & Fax: (954) 845786 - 954/ 584 -5799 (Fax)

16.    GOVERNING LAW; JURISDICTION AND VENUE

This note shall be governed by the laws of the State of California, excluding its rules relating to conflict of laws among different jurisdictions.  The exclusive jurisdiction and venue of any legal action instituted by any party to this note shall be pursuant to section 20 of this note (Arbitration Clause).

17.    OBLIGATIONS OF GUARANTORS; JOINT & SEVERAL LIABILITY

If more than one person signs this note, each is fully and personally obligated to keep all of the promises made in this instrument, including the promise to pay the full amount owed to Lender.  Any person who is a guarantor, surety or endorser of this note is likewise obligated to keep all of the promises made herein, as is any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this note, and Lender may enforce its rights under this note against each such person individually or against all such persons together (joint and several liability).  This means that Borrower, as well as any guarantor, surety or endorser of this note, may individually be required to pay all amounts owed under this note to the partial or total exclusion of the others.

18.    ADDITIONAL DOCUMENTS; LOST, STOLEN OR DESTROYED DOCUMENTS

In the event Lender shall at any time discover that this note, or any other document related to the particular loan transaction between Borrower and Lender which is evidenced by this note (hereinafter collectively referred to as "Loan Documents"), contains an error which was caused by a clerical or ministerial mistake, mathematical miscalculation, computer glitch, printing error or similar mistake, Borrower agrees, upon notice from Lender, to re-execute whatever Loan Documents are necessary to correct such errors, and also agrees that it will not hold Lender responsible for any consequential or other damages to Borrower which may have resulted from such errors. In the event that any of the Loan Documents are lost, stolen, mutilated or destroyed, and Lender delivers to Borrower an indemnification in Borrower's favor, duly signed by Lender, then Borrower will sign and deliver to Lender a Loan Document which is identical in form and content which will have the effect of the original for all purposes relevant to the loan transaction in question.

*Page 5 of 9*

19.    ARBITRATION CLAUSE

In the event of any dispute, claim, disagreement and/or controversy of any kind or nature, arising out of or relating in anyway to this transaction, its subject matter, its negotiation, execution, administration, default or termination shall be submitted to binding arbitration pursuant to the following terms and conditions as follows:

(1) "Transaction" means this fully executed promissory note and any and all personal guaranty related hereto (a) payment of money (b) transfer or exchange of property or anything of value, (c) extensions of credit and/or funds pursuant to the promissory note (d) applications for or inquiries about, credit, or forbearance of payment of the note from, its successors or assigns, Lender to Borrower, including this Transaction, and (2)"Claim" means any case, controversy, dispute, tort, disagreement, lawsuit, claim, or counterclaim, and other matters in question now or hereafter existing between Lender (including Lender's corporate parent, affiliates, subsidiaries, agents, employees, lawyers, officers, directors, successors and assigns) and Borrower. A Claim includes, without limitation, anything arising out of, in connection with, or relating to: (a) this note; (b) the advertisement, solicitation, application, processing, closing or servicing of this Transaction or any instruments executed in conjunction with it including but not limited to the terms of the note, representations, promises, undertakings or covenants made relating to the note, or note Agreements executed in conjunction with the personal guarantys and the Security Instrument, services provided under the Promissory Note, and the validity and construction of the note; (c) any Transaction;

**Consideration.** Arbitration is made in consideration of the processing and/or application for funds and is also made in further consideration of our funding of this note at the interest rate(s) and terms referenced in this document.

**Arbitration.** To the extent allowed by applicable law, any Claim, or set forth above, shall be resolved by binding arbitration in accordance with (1) the Federal Arbitration Act 9 U.S.C. $1 - 16; (2) the Expedited Procedures of the Commercial Arbitration Rules of the American Arbitration Association (the "Arbitration Rules") then in effect; and (3) this note. If the terms of this note and the Arbitration Rules are inconsistent, the terms of this note shall control. The laws applicable to the arbitration proceeding shall be the laws of the state of California. The parties agree that the Arbitrator shall have all powers provided by law, this transaction and the terms and conditions of the note. However, the arbitrator shall have no power to vary or modify any of the provisions of the note. Any party to this transaction may bring an action in any court having jurisdiction, including a summary or expedited proceeding, to specifically enforce this agreement or a motion to compel arbitration may be brought at any time, even after a Claim has been raised in a Court of law a Transaction has been completed, discharged, or paid in full.

**Notice of Election.** That written notice of election to submit a claim to arbitration and all other notification requirements pursuant to this arbitration clause shall be sent pursuant to <u>Section 16. – Notices</u> of the promissory note. Arbitration shall commence within forty five (45) days after written notice of election has been sent out to all interested parties.

**Interstate Commerce pursuant to Federal Arbitration Act.** Borrower acknowledges that this Transaction constitutes interstate commerce within the meaning of the Federal Arbitration Act, for a number of reasons including but not limited to 1) the fact that the funding for said note may come or have come in whole or part from sources outside the state, 2) because of the possible resale of the note, if any, in a secondary market, 3) because of the possible obtaining of life insurance from interstate insurers, 4) contracting and repayment through the sale of extended service and warranty contracts from interstate providers.

**Place of Arbitration.** The proceeding shall be conducted in a neutral location. In this case the parties agree that the arbitration shall be conducted in the Eastern District of Michigan and administered by the United States District Court for this District, or alternatively, its Magistrates, unless another location is mutually agreed upon in writing by both parties. The arbitrator shall set the dates, time and address where the hearing is to take place, written notice of which must be given to the parties at least twenty one (21) days in advance.

**Selection of Arbitrator.** Within seven (7) days after written notice of arbitration has been served, the Lender and Borrower shall select one arbitrator mutually agreeable to them. However, if they are unable to do so, the Lender shall have the exclusive right within fifteen (15) working days, to submit names and qualifications of five (5) potential arbitrators. The Lender and Borrower shall pick one of these five (5) persons to be the arbitrator pursuant to the following procedure:

a) the Lender and Borrower shall each have the right to strike or reject two (2) names submitted by the Lender.

b) The party requesting arbitration shall strike the first name and the other party, the second. This process will be repeated and the remaining person shall be the arbitrator.

All costs, expenses, and fees of the arbitrator shall be shared equally by the parties.

**Qualifications of the Arbitrator.** No one who has any personal or financial interest in the outcome or result of the arbitration shall serve as a neutral arbitrator. Moreover, anyone chosen as an arbitrator must have had at least seven (7) years of training and experience in the area(s) of law involved in the dispute between the parties. Prior to accepting appointment, the prospective arbitrator shall disclose any facts or circumstances likely to create a presumption of bias or prejudice or the lack of requisite training and experience. Upon receipt of such information, the Lender shall submit five (5) new names and repeat the selection process until a neutral qualified person is selected to arbitrate the dispute.

**Judgment.** The award rendered by the arbitrator shall be final, non-appealable and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

**Survival.** This Arbitration Agreement shall survive: (1) repayment of this note and/or any additional extension of credit, or (2) any insurance coverage, schedule, or policy, or (3) any termination of this notice.

**Costs and Expenses.** At your request, the Lender will advance the first $500.00 of any filing, retainer fee for retention for the arbitrator and/or hearing fees for any arbitration demand that may be filed relating to a Claim. The arbitrator will decide who will ultimately be responsible for paying any fees in connection with the arbitration. Unless inconsistent with applicable law or the this document (which gives Lender the right to attorney's fees and costs in the event Borrower defaults), each party shall bear the expense of their respective attorneys', experts' and witness fees, regardless of which party prevails in the arbitration.

**Applicable Doctrines.** The statute of limitations, estoppel, waiver, laches, and similar doctrines shall be applicable in any arbitration proceeding, and the commencement of any arbitration proceeding shall be deemed the commencement of an action for these purposes.

**No class actions; No joinder of parties; Waiver of right to jury trial.** The arbitration will take the place of any court proceeding including a trial before a judge or a judge and jury, any such arbitration shall be conducted on an individual basis, and not as part of a common or class action. It is expressly acknowledged and agreed by borrower and lender that any purported common issues of law or fact shall be resolved on an individual basis.  if the appointed arbitrator should award any damages, such damages shall be limited to actual and direct damages and shall include on behalf of lender when applicable all liquidated damages as set forth in the note and identified as late charges and termination fees.

EXECUTION:

IN WITNESS WHEREOF, the undersigned, as a maker of the above promissory note and an obligor of the legal obligation evidenced by said note, has duly executed this instrument as his voluntary act and deed as of the date first above written.

Borrowing Entity: MOBE, Inc.
Tax ID: 20-4989164

Mr. Joseph Moro
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

Mrs. Kelly Moro
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

DAWN C. COLLURA
MY COMMISSION # DD 578202
EXPIRES: July 26, 2010
Bonded Thru Notary Public Underwriters

sworn & subscribed before
me this 27 day of
February 2008

*Page 8 of 9*

# ORBACH WATERS ADVISORS, INC.

### REGISTERED   INVESTMENT   ADVISORS

*PLEASE HAVE THE FOLLOWING SIGNATURES NOTARIZED:*

_____
Mr. Josh Becker
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

_____
Mr. Michael Becker
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

DAWN C. COLLURA
MY COMMISSION # DD 578202
EXPIRES: July 28, 2010
Bonded Thru Notary Public Underwriters

Sworn + subscribed before
me on this 27 day
of February 2008

Page 9 of 9

# EXHIBIT 2

TEL 248-758-2323
FAX 866-613-8969

LAW OFFICE OF

# DAVID A. SEBASTIAN, P.C.

www.davidsebastianlaw.com

---

## ARBITRATION AWARD

### CASE:

OWN CAPITAL, LLC v.       MOBE, INC., JOSEPH MORO, KELLY MORO,
                          JOSH BECKER AND MICHAEL BECKER

### REPRESENTATION OF PARTIES:

For OWN Capital, LLC appeared Lawrence V. Stawiarski and Earl R. Johnson

Mobe, Inc., Joseph Moro, Kelly Moro, Josh Becker and Michael Becker did not appear

### CASE SUMMARY:

OWN Capital, LLC alleged breach of a promissory note by Mobe, Inc., and breach of guarantee agreements by the individuals  Joseph Moro, Kelly Moro, Josh Becker and Michael Becker

### CLAIM DATA:

| | |
|---|---:|
| Claim (including interest): | $247,326.00 |
| Costs: | 300.44 |
| Attorney Fees: | 7,377.00 |
| | $255,003.44 |

### AWARD:

The undersigned Arbitrator has decided and determined in full and final resolution of the issues submitted for determination that Mobe, Inc., Joseph Moro, Kelly Moro, Josh Becker and Michael Becker are liable to and shall pay OWN Capital, LLC the sum of $255,003.44.

### OTHER ISSUES:

All correspondence, pleadings and notices were served on Mobe, Inc. as required pursuant to paragraph 15 of the Promissory Note.

The arbitrator acknowledges that he has read the pleadings and other materials filed by OWN Capital, LLC.



SEVEN WEST SQUARE LAKE ROAD | BLOOMFIELD HILLS, MICHIGAN 48302
EMAIL DAVID@DAVIDSEBASTIANLAW.COM

FROM THE DESK OF

# DAVID SEBASTIAN

## AFFIRMATION

I, David A. Sebastian, the undersigned arbitrator, do hereby affirm, upon my oath as arbitrator that I am the individual described herein who executed this instrument which is my oath and award.

Dated: August 27, 2010

/s/David A. Sebastian
_____
David A. Sebastian, Arbitrator